Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1822 | **DATE** | 7/30/2002 |
| **CASE TITLE** | State of Illinois vs. Daiwa Special Asset Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: We reverse the bankruptcy court's decision that the State's right of setoff does not arise under its contract with Doctors Hospital and remand this case for further proceedings consistent with this opinion. Ruling date of 8/15/02 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 3 1 2002 | 15 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | SB. | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/30/2002 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | Date/time received in central Clerk's Office | GL mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE DOCTORS HOSPITAL OF HYDE PARK, )
)
Debtor. )
)
)
--------------------------------------------------------- )
)
STATE OF ILLINOIS, )
)
Appellant, )
)
v. ) No. 02 C 1822
)
DAIWA SPECIAL ASSET CORP., )
)
Appellee. )



DOCKETED
JUL 31 2002

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Judge:

Doctors Hospital of Hyde Park, Inc. ("Doctors Hospital") filed for bankruptcy on April 17, 2000. The State of Illinois ("State") acknowledges that it owes Doctors Hospital approximately $182,000 in Medicaid reimbursements, but it asked the bankruptcy court to setoff against this amount approximately $562,000 in taxes and penalties allegedly owed to it by Doctors Hospital. Daiwa Special Asset Corporation ("Daiwa") objected, claiming that it held a perfected security interest in Doctor Hospital's healthcare receivables. The bankruptcy court sided with Daiwa, and the State has appealed. For the reasons set forth below, we reverse this decision.

BACKGROUND

Doctors Hospital provided hospital and long-term care to Medicaid patients pursuant to a Medical Assistance Program Agreement and a Long-Term Provider Agreement (collectively, the

1

"Agreements") with the Illinois Department of Public Aid ("IDPA"). Doctors Hospital encountered financial difficulties and filed a bankruptcy petition on April 17, 2000. The State apparently acknowledges that it owes Doctors Hospital $180,624.14 for pre-petition Medicaid services and $1,855.41 for post-petition Medicaid services. However, the State alleges that Doctors Hospital owes it $563,255.75 – $298,652.00 for taxes and penalties related to the operation of its hospital unit, $12,360.00 for taxes and penalties related to the operation of its long-term care unit, $73,438.56 for retail occupation and use taxes, $42.95 for income taxes, $140,930.11 for pre-petition unemployment taxes, and $37,832.13 for post-petition unemployment taxes.[1] The State claims that § 10.05[2] and § 10.06[3] of the State Comptroller Act ("Comptroller Act"), 15 ILCS 405/1 *et seq.*, give it the right to setoff this amount against the amount it owes Doctors Hospital.

Complicating matters, though, is the claim by Daiwa that it holds a perfected security interest in Doctor Hospital's healthcare receivables. Daiwa's predecessor, Daiwa Healthco-2, apparently entered into a financing agreement with Doctors Hospital whereby the hospital assigned its receivables to Daiwa

---

[1] All of these amounts accrued after July 1, 1997.

[2] Section 10.05 reads in relevant part as follows:

> Whenever any person shall be entitled to a warrant or other payment from the treasury or other funds held by the State Treasurer, on any account, against whom there shall be any account or claim in favor of the State, then due and payable, the Comptroller, upon notification thereof, shall ascertain the amount due and payable to the State, as aforesaid, and draw a warrant on the treasury or on other funds held by the State Treasurer, stating the amount for which the party was entitled to a warrant or other payment, the amount deducted therefrom, and on what account, and directing the payment of the balance . . . . The Comptroller may deduct the entire amount due and payable to the State or may deduct a portion of the amount due and payable to the State in accordance with the request of the notifying agency.

[3] Section 10.06 reads as follows:

> No sale, transfer or assignment of any claim or demand against the state, or right to a warrant on the treasurer, shall prevent or affect the right of the comptroller to make the deduction and off-set provided in the foregoing section.

2

as collateral for a revolving loan. On March 31, 1997, Daiwa perfected its interest in those receivables by filing a financing statement, and on July 1, 1997, Daiwa sent a letter to the Office of the State Comptroller ("Comptroller") notifying the State of the assignment of the receivables. Daiwa claims that under § 9-318(1)[4] of the Illinois Commercial Code ("Commercial Code"), 810 ILCS 5/9-318(1) (West 1993), its perfected security interest in the receivables is superior to the State's setoff interest.

The State sought an order from the bankruptcy court lifting the automatic stay to allow the State to setoff unpaid taxes and penalties accruing after July 1, 1997, against the amount it owes Doctors Hospital. Daiwa opposed the motion. The bankruptcy court held that Daiwa's perfected security interest in Doctors Hospital's healthcare receivables is superior to the State's setoff interest and therefore refused to allow the requested setoff. *See In re Doctors Hospital of Hyde Park, Inc.*, 272 B.R. 677 (Bankr. N.D.Ill. 2002). The State appealed this ruling to the District Court.

## DISCUSSION

The bankruptcy court's decision follows from a number of conclusions which the State now appeals.[5] First, the State challenges that court's conclusion that the State's setoff claim does not arise under its contract with Doctors Hospital. Second, the State contests the determination that §§ 10.05-

---

[4] Since the alleged security interest and priority dispute arose prior to the recent amendments to Article 9, *see* P.A. 91-893 § 5 (July 1, 2001), the revised Article 9 does not apply in this case. The prior § 9-318(1) reads as follows:

> (1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 9-206 the rights of an assignee are subject to
> (a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and
> (b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

[5] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The issues presented in this appeal are questions of law subject to de novo review. *In re Lefkas General Partners*, 112 F.3d 896, 900 (7th Cir. 1997).

3

10.06 of the Comptroller Act and § 9-318(1) of the Commercial Code are in direct conflict. Third, the State disputes the bankruptcy court's finding that the § 9-318(1) of the Commercial Code controls over §§ 10.05-10.06 of the Comptroller Act. Finally, the State contests the determination that Daiwa's notice of assignment to the IDPA was sufficient to place the Comptroller on notice of the assignment for purposes of § 9-318(1)(b) of the Commercial Code. Since we find that the State's setoff claim does arise under its contract with Doctors Hospital, we need only address the first of these issues.

The State asserts that "where the rights of parties contracting with it are established by statute, those statutes constitute part of the contract." Reply at 4. Since § 10.05 of the Comptroller Act gives the State a right of setoff,[6] the State claims that this right is a contractual defense which can be raised pursuant to § 9-318(1)(a) of the Commercial Code. If the right of setoff is a contractual defense, then the State has the right to raise it at any time irrespective of notification. The State argues that the question of an alleged conflict between §§ 10.05-10.06 and § 9-318(1)(a) is thereby moot. The key question, then, is whether § 10.05 of the Comptroller Act constitutes an implied term of the State's contract with Doctors Hospital. We find that it does.[7]

Although the Agreements do not expressly incorporate the State's right of setoff, this does not mean that it is not a term of the contract. Under Illinois law, "contracts must be construed to give effect to the intention of the parties as expressed in the agreement . . . ." *Schiro v. W. E. Gould & Co.*, 165 N.E.2d 286, 289 (Ill. 1960). To this end, Illinois courts have routinely held that certain terms which are

---

[6] Daiwa does not contest the bankruptcy court's conclusion that the State does have a right of setoff. *See In re Doctors Hospital of Hyde Park, Inc.*, 272 B.R. at 683-84.

[7] We note at the outset that we reject the State's contention that the Agreements should be interpreted to avoid a statutory conflict between §§ 10.05-10.06 and § 9-318(1)(a). Although the Illinois Supreme Court has adopted a canon of statutory construction which favors a statutory interpretation which allows both statutes to stand, *see In re Marriage of Lasky*, 678 N.E.2d 1035, 1037 (Ill. 1997), the Court has never suggested that this canon should be extended so that *contracts* are interpreted to avoid statutory conflicts.

4

not found in the express language of the agreement are nonetheless fully enforceable as implied contractual terms. *See, e.g., Selke v. New England Ins. Co.*, 995 F.2d 688, 689-90 (7th Cir. 1993) (applying Illinois law and noting that "[a] contract is the sum of its express and implied terms."). For example, in *Illinois Bankers' Life Ass'n v. Collins*, 173 N.E. 465 (Ill. 1930), the Illinois Supreme Court held that a life insurance policy for a married woman contained an implied term which prevented her husband from collecting on the policy if he was convicted of murdering her. In *Schiro*, 165 N.E.2d at 286, the Court held that a contract for the construction of a building contained an implied term which required that the building comply with all city codes. In both of these cases, the Court relied on the rule that "all laws in existence when the contract is made necessarily enter into and form a part of it as fully as if they were expressly referred to or incorporated into its terms." *Collins*, 173 N.E. at 467. *See also Schiro*, 165 N.E.2d at 290 ("the law existing at the time and place of the making of the contract is deemed a part of the contract, as though expressly referred to or incorporated in it"). "The rationale for this rule is that the parties to the contract would have expressed that which the law implies 'had they not supposed that it was unnecessary to speak of it because the law provided for it.'" *Schiro*, 165 N.E.2d at 290 (quoting 12 I.L.P. Contracts § 230). Contracts are presumed to incorporate existing statutes "unless otherwise clearly indicated by the terms of the agreement." *Illinois Bankers' Life Ass'n v. Collins*, 173 N.E. 465, 467 (Ill. 1930) (internal citations omitted).

Applying these rules, we find that every State contract for Medicaid services necessarily includes an implied term which allows the State to setoff any unpaid taxes or penalties owed by the contracting hospital against the amount owed to that hospital by the State. This conclusion is consistent with the mandatory nature of the Comptroller Act. Under § 10.05, the Comptroller does not merely have a *right* to setoff unpaid taxes and penalties; rather, he has the *duty* to setoff such amounts. *See Bunn Capitol Grocery Co. v. State*, No. 3608, 1943 WL 3118, at *3 (Ill. Ct. Cl. 1943) (finding that the virtually

5

identical predecessor to the Comptroller Act imposed a duty on the State Auditor to setoff amounts owed to the State against amounts owed by the State). The mandatory nature of the Comptroller Act suggests that the right of setoff is a "standard, 'off the rack' term[] that parties can vary if they want but that govern[s] otherwise." *Selke*, 995 F.2d at 690. This conclusion is also consistent with the intent of the parties. Doctors Hospital, a sophisticated institution, must have known when it signed the Agreements that the State had a right to setoff unpaid taxes and penalties against healthcare receivables. *Cf. In re Metropolitan Hospital*, 131 B.R. 283, 291 (E.D.Penn. 1991) (in denying priority to bondholders who claimed perfected security interest in Medicare receivables, the court noted that the bondholders "were sophisticated lenders that knew, or should have known, the mechanics of the provider-reimbursement provisions of the medicare statute."). Moreover, given the mandatory nature of the Comptroller Act, it would be nonsensical to presume that the State intended to deprive itself of its setoff right – § 10.05 makes setoff mandatory on the Comptroller, and a state agency does not have the power to change by contract this requirement of state law. Given the mandatory nature of the Comptroller Act and the intentions of the parties, and in the absence of express contractual terms otherwise, we find that the State's right of setoff is an implied term of its Agreements with Doctors Hospital.

Daiwa argues that, even assuming that the right of setoff is an implied contractual term, there remains a statutory conflict between §§ 10.05-10.06 of the Comptroller Act and § 9-318(1) of the Commercial Code. Daiwa misses the point. The statutory conflict which the bankruptcy court identified emerges in this case only if the Agreements are read not to incorporate the setoff right enumerated in the Comptroller Act. If, however, the setoff right is an implied contractual term, the alleged statutory conflict disappears – § 10.05 of the Comptroller Act gives the State a contractual right of setoff, and § 9-318(1)(a) of the Commercial Code acknowledges that this right may be raised against an assignee at any time. Because its setoff claim arises under the Agreements, the State is entitled to setoff taxes and

6

penalties owed by Doctors Hospital accruing after July 1, 1997 against healthcare receivables owed to Daiwa despite the alleged conflict between the Comptroller Act and the Commercial Code.[8]

## CONCLUSION

For the foregoing reasons, we reverse the bankruptcy court's decision that the State's right of setoff does not arise under its contract with Doctors Hospital and remand this case for further proceedings consistent with this opinion.

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 7/30/02

---

[8] We recognize that § 10.06 and § 9-318(1) on their face do appear to conflict – § 10.06 purports to protect the State's right of setoff (even when it is not a contractual term) despite assignment, while § 9-318(1) limits claims or defenses raised after assignment. Given our conclusion that the State's right of setoff is an implied contractual term, however, this facial conflict is purely academic for the purposes of this case, so we need not address the issue here.

7